No. 21-50574

# In the United States Court of Appeals for the Fifth Circuit

CHARLES EPLEY,
Plaintiff-Appellant

v.

SAMUEL B. ITIE, MEDICAL OFFICIAL AT LYNAUGH; ROXIE INGRAM, MEDICAL OFFICIAL AT LYNAUGH; M. FUENTES, PRACTICE MANAGER AT LYNAUGH; MICHELLE D. SELLERS, CLASSIFICATION AT LYNAUGH; PAUL M. ROBINSON, SERGEANT AT LYNAUGH; HEATHER M. GONZALES, SERGEANT AT LYNAUGH; RAUL MELERO, CAPTAIN AT LYNAUGH,
Defendants-Appellees.

Appeal from the United States District Court for the Western District of Texas, Pecos Division, USDC No. 4:18-CV-00034

## SUPPLEMENTAL BRIEF OF APPELLEES SELLERS, GONZALES, ROBINSON, AND MELERO

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

SHANNA E. MOLINARE
Chief, Law Enforcement Defense Division

ALEC R. SIMPSON*
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 463-2080
Counsel for Appellees
*Lead Counsel

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have

an interest in the outcome of this case. These representations are made in order that

the judges of this Court may evaluate possible disqualification or recusal.

- Charles Epley, Plaintiff-Appellant, pro se

- Samuel Weiss, counsel for Plaintiff-Appellant

- M. Fuentes, Heather Gonzales, Roxie Ingram, Samuel Itie, Raul Melero, Paul Robinson, and Michelle Sellers, Defendants-Appellees

- Ken Paxton, Brent Webster, Grant Dorfman, James Lloyd, Shanna E. Molinare, Luis Suarez, and Alec Simpson, counsel for Defendants-Appellees

/s/ *Alec R. Simpson*
**ALEC R. SIMPSON**
Assistant Attorney General

## STATEMENT REGARDING ORAL ARGUMENT

Appellees submit that the legal arguments, issues on appeal, and statement of the record are adequately presented in the briefs of the parties and oral argument is not necessary. If, however, the Court requests oral argument, Appellees will be prepared to present their arguments to the Court at the Court's convenience.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................. vi

STATEMENT OF JURISDICTION ....................................................... 1

ISSUES PRESENTED ON APPEAL ...................................................... 2

STATEMENT OF THE CASE ............................................................... 3

SUMMARY OF THE ARGUMENT ....................................................... 5

STANDARD OF REVIEW ................................................................... 8

ARGUMENT ...................................................................................... 9

    I.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT SEVERED AND TRANSFERRED THIS ACTION TO THE WESTERN DISTRICT OF TEXAS, PECOS COUNTY DIVISION WHERE ALL APPELLEES WORKED AND THE ALLEGED EVENTS AND OMISSIONS OF THIS ACTION OCCURRED.. ................................... 10

    II.   THE DISTRICT COURT PROPERLY DISMISSED WHAT EPLEY CHARACTERIZES AS AN ADA CLAIM WHEN HE FAILED TO ALLEGE ANY FACTS RELATED TO THIS CLAIM OR SPECIFICALLY ALLEGE AN ADA CLAIM AGAINST APPELLEES. ....... 14

    III.   THE DISTRICT COURT CORRECTLY DISMISSED EPLEY'S FAILURE TO PROTECT CLAIM AGAINST APPELLEES SELLERS, ROBINSON, GONZALES, AND MELERO BECAUSE EPLEY WAS ASSIGNED TO A SINGLE CELL AND DID NOT SUFFER ANY PHYSICAL INJURY AS A RESULT OF HIS HOUSING ASSIGNMENT AT THE LYNAUGH UNIT. ................................................................................. 16

    IV.   THE DISTRICT COURT DID NOT ERR IN DISMISSING EPLEY'S DELIBERATE INDIFFERENCE CLAIM AGAINST APPELLEE SELLERS BECAUSE EPLEY FAILED TO ESTABLISH THAT HE WAS EXPOSED TO A SUBSTANTIAL RISK OF SERIOUS HARM AND THAT APPELLEE SELLERS DISREGARDED THAT RISK. ................... 22

    V.   THE DISTRICT COURT DID NOT ERR IN DISMISSING EPLEY'S FREE EXERCISE CLAIM AGAINST APPELLEE ROBINSON BECAUSE THE SUMMARY JUDGMENT EVIDENCE DOES NOT SHOW THAT APPELLEE ROBINSON EVER CONFISCATED EPLEY'S RELIGIOUS MEDALLION. ....................................................... 27

    VI.   THE DISTRICT COURT DID NOT ERR IN DISMISSING EPLEY'S RETALIATION

CLAIM AGAINST APPELLEE ROBINSON WHEN EPLEY FAILED TO SATISFY THE ELEMENTS REQUIRED IN ORDER TO STATE A RETALIATION CLAIM AGAINST APPELLEE ROBINSON. ........................................................................................ 31

VII.    THE DISTRICT COURT CORRECTLY DECIDED THAT APPELLEES WERE ENTITLED TO QUALIFIED IMMUNITY.................................................................... 36

CONCLUSION ............................................................................................................ 39

CERTIFICATE OF SERVICE ...................................................................................... 40

CERTIFICATE OF COMPLIANCE ............................................................................ 40

# INDEX OF AUTHORITIES

Page(s)

Cases

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ............................................................................................ 37

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .............................................................................................. 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 14, 25

*Atiyeh v. Capps*,
  449 U.S. 1312 (1981) .......................................................................................... 17

*Baker v. McCollan*,
  443 U.S. 137 (1979) ............................................................................................ 22

*Baker v. Putnal*,
  75 F.3d 190 (5th Cir. 1996) ................................................................................. 8

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*,
  520 U.S. 397 (1997) ............................................................................................ 24

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 14

*Cadena v. El Paso Cty.*,
  946 F.3d 717 (5th Cir. 2020) ............................................................................. 23

*Caldwell v. Palmetto State Sav. Bank*,
  811 F.2d 916 (5th Cir.1987) .............................................................................. 12

*Carlucci v. Chapa*,
  884 F.3d 534 (5th Cir. 2018) ............................................................................. 24

*Cass v. City of Abilene*,
  814 F.3d 721 (5th Cir. 2016) ....................................................................... 28, 37

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .............................................................................................. 9

*Cleveland v. Bell*,
  938 F.3d 672 (5th Cir. 2019) .................................................................... 23

*Connick v. Thompson*,
  563 U.S. 51 (2011) .................................................................................... 23

*Cruz v. Beto*,
  405 U.S. 319 (1972) .................................................................................. 27

*Curry v. HEB Food Stores, Inc.*,
  104 F. App'x 407 (5th Cir. 2004) .............................................................. 11

*Davidson v. Cannon*,
  474 U.S. 344 (1986) .................................................................................. 23

*Domino v. Texas Dep't of Criminal Justice*,
  239 F.3d 752 (5th Cir. 2001) .................................................................... 24

*Easter v. Powell*,
  467 F.3d 459 (5th Cir. 2006) .................................................................... 23

*Epley v. Gonzalez, et al.*,
  860 Fed. Appx. 310 (5th Cir. 2021) .......................................................... 15

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ................................................................ 16, 17, 21, 23

*Franceski v. Plaquemines Parish School Board*,
  772 F.2d 197 .............................................................................................. 10

*Freeman v. Texas Dept. of Criminal Justice*,
  369 F.3d 854 (5th Cir. 2004) .................................................................... 28

*Gobert v. Caldwell*,
  463 F.3d 339 (5th Cir. 2006) .............................................................. 23, 24

*Hare v. City of Corinth*,
  74 F.3d 633 (5th Cir. 1996) ...................................................................... 23

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) .................................................................................. 37

*In re Hinsley*,
  201 F.3d 638 (5th Cir. 2000) .................................................................... 11

*In re Planned Parenthood Fed'n of Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022) .................................................................... 10

*In re Texas Mortgage Services Corp.*,
   761 F.2d 1068 (5th Cir.1985) ................................................................ 11

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ........................................................... 12, 13

*Jackson v. Cain*,
   864 F.2d 1235 ..................................................................................... 32

*Jarvis Christian College v. Exxon Corp.*,
   845 F.2d 523 (5th Cir.1988) ........................................................... 10, 12

*Lemelle v. Universal Mfg. Corp.*,
   18 F.3d 1268 (5th Cir. 1994) ................................................................. 9

*Lynch v. Cannatella*,
   810 F.2d 1363 (5th Cir. 1987) ............................................................. 22

*Madan, Hidatsa & Arika Nation v. U.S. Dept. of the Interior*,
   *Bridgeport Int'l*, 358 F.Supp.3d 1 (D.D.C.2019) .................................. 13

*McDonald v. Stewart*,
   132 F.3d 225 (5th Cir. 1998) ......................................................... 31, 36

*Mills v. Beech Aircraft Corp.*,
   886 F.2d 758 (5th Cir.1989) ................................................................ 12

*Neil Bros. v. World Wide Lines, Inc.*,
   425 F.Supp.2d 325 (E.D.N.Y.2006) ..................................................... 13

*Newby v. Dretke*,
   No. 2:05-cv-0128, 2006 WL 8439856 (N.D. Tex. Aug. 18, 2006) ........... 28

*Norman v. Apache Corp.*,
   19 F.3d 1017 (5th Cir. 1994) ................................................................. 9

*Pearson v. Callahan*,
   555 U.S. 223 (2009) .............................................................................. 37

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) .............................................................................. 13

*Scott v. Miss. Dept. of Corr.*,
   961 F.2d 77 (5th Cir. 1992) .................................................................. 28

*Stauffer v. Gearhart*,
  741 F.3d 574 (5th Cir. 2014) ................................................................ 37

*Stephens v. Jessup*,
  793 F.3d 941 (8th Cir. 2015) ................................................................ 11

*Thomas v. Trico Prods. Corp.*,
  256 F. App'x 658 (5th Cir. 2007) ......................................................... 11

*Thorne v. Jones*,
  765 F.2d 1270 (5th Cir. 1985) .............................................................. 22

*Turner v. Safley*,
  482 U.S. 78 (1987) .......................................................................... 27, 28

*Wiley v. State Farm Fire and Cas. Co.*,
  585 F.3d 206 (5th Cir. 2009) .................................................................. 9

*Wilson v. Seiter*,
  501 U.S. 294 (1991) ............................................................................. 23

*Woods v. Smith*,
  60 F.3d 1161 (5th Cir. 1995) ........................................... 31, 32, 34, 36

Statutes
28 U.S.C. § 124(d)(6) ............................................................................. 12
28 U.S.C. § 1291 ...................................................................................... 1
28 U.S.C. § 1391(b) .......................................................................... 11, 13
28 U.S.C. § 1391(c)(1) ........................................................................... 11
28 U.S.C.A. § 1404(a) ......................................................... 10, 12, 13, 14
28 U.S.C Section 1404 ........................................................................ 9, 12
42 U.S.C. § 1983 ...................................................................... 22, 23, 28
Section 1391(b)(1) or (2) ....................................................................... 12

Rules

Fed. R. Civ. P. 56(c) ................................................................................. 9
Federal Rule of Appellate Procedure 3 .................................................... 11
Federal Rule of Appellate Procedure 32(a)(7)(C) ................................... 40
Rule 3(c) of the Federal Rules of Appellate Procedure ........................... 11
Rule 32(a)(5) ........................................................................................... 40
Rule 32(a)(6) ........................................................................................... 40
Rule 32(a)(7)(B)(i) ................................................................................... 40

## STATEMENT OF JURISDICTION

The Court has appellate jurisdiction over this appeal pursuant to 28 U.S.C.

§ 1291.

## ISSUES PRESENTED ON APPEAL

I.   WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT SEVERED AND TRANSFERRED THIS ACTION TO THE WESTERN DISTRICT OF TEXAS, PECOS COUNTY DIVISION WHERE ALL APPELLEES WORKED AND THE ALLEGED EVENTS AND OMISSIONS OF THIS OCCURRED?

II.  WHETHER THE DISTRICT COURT ERRED IN DISMISSING EPLEY'S ADA CLAIM WHEN EPLEY FAILED TO ALLEGE ANY FACTS RELATED TO AN ADA CLAIM AND WHEN EPLEY DID NOT SPECIFICALLY ALLEGE AN ADA CLAIM AGAINST APPELLEES?

III. WHETHER THE DISTRICT COURT ERRED IN DISMISSING EPLEY'S FAILURE TO PROTECT CLAIM AGAINST APPELLEES WHEN THE SUMMARY JUDGMENT EVIDENCE ESTABLISHED THAT EPLEY HAD BEEN ASSIGNED TO A SINGLE-MAN CELL AND DID NOT SUFFER A PHYSICAL INJURY AS A RESULT OF HIS HOUSING ASSIGNMENT AT THE LYNAUGH UNIT?

IV.  WHETHER THE DISTRICT COURT ERRED IN DISMISSING EPLEY'S DELIBERATE INDIFFERENCE CLAIM AGAINST APPELLEE SELLERS WHEN EPLEY FAILED TO SHOW THAT HE WAS EXPOSED TO A SUBSTANTIAL RISK OF SERIOUS HARM AT THE LYNAUGH UNIT AND THAT APPELLEE SELLERS DISREGARDED THAT RISK?

V.   WHETHER THE DISTRICT COURT ERRED IN DISMISSING EPLEY'S FREE EXERCISE CLAIM AGAINST APPELLEE ROBINSON WHEN THE SUMMARY JUDGMENT EVIDENCE CONTRADICTS EPLEY'S ALLEGATION THAT APPELLEE ROBINSON CONFISCATED EPLEY'S RELIGIOUS MEDALLION?

VI.  WHETHER THE DISTRICT COURT ERRED IN DISMISSING EPLEY'S RETALIATION CLAIM AGAINST APPELLEE ROBINSON WHEN EPLEY DID NOT SATISFY THE ELEMENTS OF A RETALIATION CLAIM?

VII. WHETHER THE DISTRICT COURT ERRED IN HOLDING THAT APPELLEES WERE ENTITLED TO QUALIFIED IMMUNITY WHEN EPLEY FAILED TO ESTABLISH THAT APPELLEES VIOLATED HIS CONSTITUTIONAL RIGHTS?

## STATEMENT OF THE CASE

Appellant Charles Epley was formerly confined at several units within the Texas Department of Criminal Justice. During his incarceration Epley was assigned to the Lynaugh Unit on June 2, 2016, but was temporarily transferred that same day to the Montford Unit for undisclosed medical reasons. ROA.3094. While housed at the Montford Unit, Epley was involved in a use of force incident on June 6, 2016, that resulted in minor injuries including Epley sustaining a bloody nose. ROA.3135; ROA.3166–70. Epley was transferred back to the Lynaugh Unit on June 9, with a temporary stop at the Robertson Unit on June 7. ROA.3094. Epley remained at the Lynaugh Unit until his transfer to the Huntsville Unit on June 24, followed by another transfer to the Stringfellow Unit on June 27, 2016. ROA.3094.

During his stay at the Lynaugh Unit, Epley was assigned to a single-man cell. ROA.3109–10, ROA.3112; ROA.3136; ROA.3142–52. Appellee Sellers was employed as the Chief of Classification at the Lynaugh Unit, and Appellees Robinson, Gonzales, and Melero each served as sergeants and captain, respectively. ROA.465–67. Epley submitted several grievances at the Lynaugh Unit, most detailing his frustration at being involved in a use of force incident at the Montford Unit, where none of the Appellees were employed. ROA.3116–17, ROA.3113–14, ROA.3109–10. Epley's grievances did not allege Appellees' failure to protect him from offender gangs at the Lynaugh Unit that Epley alleged caused him distress but no physical injury. ROA.3116–17, ROA.3113–14, ROA.3109–10; ROA.473–74. In response to a Step 1 grievance filed on

June 20, 2016 in which Epley stated that he had requested safekeeping housing, Appellee Sellers noted during the grievance investigation that Epley had not made any complaints regarding his housing at the Lynaugh Unit and that he had been properly housed in a single-man cell in compliance with his many PULHES Health Summaries[1]—each of which designated Epley as a single-man cell only offender—used by the Unit Classification Committee to make housing assignments at the Lynaugh Unit. ROA.3109, 3112; ROA.3136; ROA.3142–3152.

Epley possessed several items of personal property in June 2016, including a large amount of legal material and religious items, all of which TDCJ officials attempted to store or ship depending on whether Epley was temporarily transferred to another unit for medical reasons or reassigned altogether. *See, e.g.*, ROA.3099, 3092, 3093. As mentioned, when Epley first arrived at the Lynaugh Unit on June 2, 2016, he was moved to direct medical observation and then transferred to the Montford Unit for medical reasons the same day. ROA.3099, 3094. Because Epley had been moved to medical observation, TDCJ staff bagged his belongings and placed them outside the door in the infirmary while Epley was under medical observation. ROA.3099. In his amended complaint, Epley alleged that Appellee Robinson confiscated his religious medallion while he was under observation in the Lynaugh Unit infirmary. ROA.475.

---

[1] "PULHES is a health classification system based on the structure and function of the body's organs and systems. PULHES is used to relay an offender's medical, physical and mental health status to staff." ROA.3175. The PULHES system "facilitates the assignment of housing, work, and programs that are compatible with each offender's health status." ROA.3174.

On May 8, 2018, Epley filed his original complaint against numerous defendants, including Appellees, in the Lubbock Division of the United States District Court for the Northern District of Texas. *See* ROA.24–57. Epley then filed an amended complaint on June 6, 2018. ROA.240–88. Judge Bryant, who presided over Epley's case in the Northern District of Texas, entered an order severing Epley's claims against Appellees and transferring them to the Western District of Texas, Pecos Division, on August 15, 2018. ROA.358–60. Once Epley's claims against Appellees had been transferred to the Western District of Texas, Epley filed another amended complaint on October 22, 2018. ROA.460–525. Appellees filed their Motion for Summary Judgment on December 2, 2020, and the district court granted Appellees' motion on May 28, 2021, dismissing each of Epley's claims against Appellees with prejudice. ROA.3563–92, 2863–64. Epley filed a notice of appeal on June 23, 2021. ROA.2865.

On December 20, 2021, Epley, proceeding *pro se*, filed his initial brief. Appellees filed their response on February 17, 2022. On May 24, 2023, this Court appointed counsel for Epley and ordered supplemental briefing. Epley filed his supplemental brief on August 2, 2023.

## SUMMARY OF THE ARGUMENT[2]

This Court should affirm the district court's grant of summary judgment in favor

---

[2] Appellees assert their Original Brief adequately addressed the issues concerning this appeal. However, Appellees will also address the newly raised issue in Epley's Supplemental Brief regarding the Northern District Court of Texas's order to sever and transfer this action to the Western District Court of Texas, Pecos Division. ROA.358–60.

of Appellees for several reasons. First, the district court did not abuse its discretion when it severed and transferred the action, *sua sponte*, to the Western District of Texas because a substantial part of the event or omissions giving rise to Epley's claims against the Lynaugh Unit employees, Appellees, occurred in the Lynaugh Unit located in the Western District of Texas — not the Northern District of Texas where Epley originally filed his lawsuit.

Second, Epley spends a significant portion of his brief discussing the American with Disabilities Act ("ADA"). However, as the district court noted, Epley failed to sufficiently allege an ADA claim against any Appellee in the court below when he merely mentioned the ADA in his amended complaint without stating any facts that could render such a claim sufficient on its face. Therefore, Epley's ADA claim against Appellees was conclusory and properly dismissed by the district court.

Third, the district court did not err in dismissing Epley's failure to protect claim against Appellees because Epley did not allege—and has failed to prove—that he suffered a physical injury at the Lynaugh Unit in June 2016 as a result of Appellees failing to protect him from some unidentified threat. Additionally, the evidence considered by the district court when it granted summary judgment in favor of Appellees shows that Epley had been assigned to a single-man cell, did not complain about his housing arrangement, and was not physically harmed during his brief assignment at the Lynaugh Unit. Therefore, the district court properly dismissed Epley's failure to protect claim against Appellees.

6

Fourth, Epley failed to show that Appellee Sellers was deliberately indifferent when Epley all but failed to prove that he was exposed to a substantial risk of serious harm or that Appellee Sellers drew the inference that such a risk existed and disregarded that risk. The allegations in Epley's amended complaint in relation to this claim are beyond tenuous when Epley claimed that he did not receive the treatment he wanted after Appellee Sellers had a conversation with a medical provider in which Epley was not involved. The evidence attached to Appellees' motion for summary judgment in the district court also confirmed that Epley denied any injuries from a use of force incident at a separate unit upon his unit transfer evaluation at the Lynaugh Unit, that Epley denied respiratory difficulty, and that no visible injuries or respiratory distress were present. Accordingly, the district court properly granted summary judgment in favor of Appellee Sellers concerning this claim.

Fifth, the district court did not err in dismissing Epley's free exercise claim against Appellee Robinson when the summary judgment evidence failed to show that Appellee Robinson improperly confiscated Epley's religious medallion in June 2016. Throughout the summer of 2016, Epley was moved to several different units due to his need for medical treatment unrelated to his claims in this lawsuit. Because Epley transferred unit assignments so often, correctional staff at these units, including the Lynaugh Unit, were required to ship Epley's personal belongings to a new unit upon Epley's reassignments. When Epley was preparing to leave the Lynaugh Unit, his personal belongings were packed and left outside the infirmary door while Epley

received treatment inside the unit infirmary. The summary judgment evidence indicates that Epley's religious medallion was lost sometime after this event and does not show that Appellee Robinson violated Epley's constitutional rights by confiscating his religious medallion. Thus, the district court properly granted summary judgment in favor of Appellee Robinson concerning Epley's free exercise claim.

Sixth, Epley failed to state a retaliation claim against Appellee Robinson because Epley did not satisfy the necessary elements to establish a claim of retaliation. Epley claimed that Appellee Robinson retaliated against him by ensuring that Epley would be denied medical treatment at the Lynaugh Unit in June 2016. Epley's claim fails when considered with the summary judgment evidence, which shows that Epley routinely and consistently received medical treatment from Lynaugh Unit medical providers throughout June 2016.

Seventh and finally, because Epley failed to show that his constitutional rights were violated in any one of the several claims he brought against Appellees as discussed above and throughout this brief, Epley did not overcome Appellees' entitlement to qualified immunity. The district court, therefore, did not err in determining that Appellees were entitled to qualified immunity.

Accordingly, this Court should affirm the district court's grant of summary judgment in favor of Appellees and its dismissal of all Epley's claims with prejudice.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo. Baker v. Putnal,*

75 F.3d 190, 197 (5th Cir. 1996). In its review, the Court applies the same criteria used by the district court and views "the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994); *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

There is no genuine issue of material fact "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (stating that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact"). "A fact is material only if its resolution would affect the outcome of the action, and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (citing *Anderson*, 477 U.S. at 248).

A party is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323.

28 U.S.C Section 1404 authorizes a district court "[f]or convenience of the parties

and witnesses, in the interests of justice" to move venue to any other district or division where the suit might have been brought. 28 U.S.C.A. § 1404(a). "Decisions to effect 1404 transfers are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion." *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir.1988); *see also In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 632 (5th Cir. 2022) ("We review [a court's decision to transfer] 'only for clear abuses of discretion that produce patently erroneous results.' [citation]").

## ARGUMENT

**I.**    **THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT SEVERED AND TRANSFERRED THIS ACTION TO THE WESTERN DISTRICT OF TEXAS, PECOS COUNTY DIVISION WHERE ALL APPELLEES WORKED AND THE ALLEGED EVENTS AND OMISSIONS OF THIS ACTION OCCURRED.**

On June 23, 2021, Epley filed his notice of appeal where he explicitly stated that he sought to appeal the final judgment entered by the United States District Court for the Western Division of Texas on May 28, 2021. ROA.2865. Now, in his supplemental briefing, Epley argues, for the first time, that this Court should reverse and remand a severance and transfer as ordered by the Northern District Court of Texas thereby undoing two of the three cases from the severance where the corresponding courts entered final judgment after a significant amount of litigation. *See Appellant's Supp. Br.* at 28; *Epley v. Lopez*, et al, No. 1:18-cv-00115-BU (N.D. Tex.), ECF. No. 70.

First, arguments raised on appeal must be included in the appellate brief or they may be considered waived. *Franceski v. Plaquemines Parish School Board*, 772 F.2d 197, 199

10

n. 1 (5th Cir.1985); *In re Texas Mortgage Services Corp.*, 761 F.2d 1068, 1073 (5th Cir.1985). Moreover, arguments "not raised in the notice of appeal" are waived. *See Curry v. HEB Food Stores, Inc.*, 104 F. App'x 407 (5th Cir. 2004); *see also Thomas v. Trico Prods. Corp.*, 256 F. App'x 658, 663 n.3 (5th Cir. 2007) ("Rule 3(c) of the Federal Rules of Appellate Procedure requires that the notice of appeal specify the order from which the appeal is taken." (*quoting In re Hinsley*, 201 F.3d 638, 641 (5th Cir. 2000)); *see also, e.g., Stephens v. Jessup*, 793 F.3d 941, 943 (8th Cir. 2015) ("[A] notice which manifests an appeal from a specific district court order or decision precludes an appellant from challenging an order or decision that he or she failed to identify in the notice.").

Even if this Court retroactively applies Federal Rule of Appellate Procedure 3 as amended in December 2021, the Northern District of Texas did not abuse its discretion in severing and transferring Epley's claims that arose out of events and omissions in the Lynaugh Unit against the Lynaugh Unit employee Appellees.

Under 28 U.S.C. § 1391(b), a civil action may be brought in

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

For venue purposes, a "natural person" resides in the district where the person is domiciled, 28 U.S.C. § 1391(c)(1).

Appellant alleges that his claims against Appellees arose in the Lynaugh Unit in Pecos County, Texas, which is in the Western District of Texas. *See* 28 U.S.C. § 124(d)(6). In his initial complaint, Epley fails to state where Appellees are domiciled or residents thereof, rather, Epley pled the names of Appellees and the titles they held within the Lynaugh unit. *See* ROA.250–52. Additionally, Epley's Supplemental Brief does not cite to anything in the record to support his assertion where Appellees are residents of or are domiciled. *See Appellant's Supp. Br.* at 30. Because Epley did not allege that Appellees reside in the Northern District or that a substantial part of the events and omissions underlying his allegations against Appellees arose in the Northern District, venue did not appear to be proper in the Northern District under Section 1391(b)(1) or (2). *See* ROA.267–79.

Even if venue was proper in the Northern District, however, the court may transfer claims "[f]or the convenience of the parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a). A district court "has broad discretion in deciding whether to order a transfer." *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir.1987); 28 U.S.C. §§ 1404(a), 1406(a). Moreover, courts may transfer cases on their own initiative. *See Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir.1989) (holding that a § 1404 motion "may be made *sua sponte*"); *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 527–28 (5th Cir.1988).

In determining whether transfer is appropriate, courts must analyze four private and four public interest factors—none of which are given dispositive weight. *See In re*

*Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). "The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). "The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* (citing *Piper Aircraft Co.*, 454 U.S. at 241 n.6). A plaintiff's choice forum is given less deference where the plaintiff does not reside in the chosen forum and the operative events did not occur there. *See Madan, Hidatsa & Arika Nation v. U.S. Dept. of the Interior, Bridgeport Int'l*, 358 F.Supp.3d 1, 6, 10 (D.D.C.2019); *Neil Bros. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 333 (E.D.N.Y.2006); *cf. Piper Aircraft Co.*, 454 U.S. at 255–56 (greater deference given to plaintiff's choice of forum when forum is also plaintiff's home district).

Under Section 1404(a), transfer was appropriate in this case. The alleged events that arose out of the Lynaugh Unit against the Lynaugh Unit employee-Appellees occurred in Pecos County, in the Western District of Texas. Venue was therefore proper in the Western District of Texas. *See* 28 U.S.C. § 1391(b). Further, at least two months prior to the district court severing and transferring the Lynaugh Unit causes of

action against the Lynaugh Appellees, Epley was no longer a resident within the Northern District because he moved to France, and his choice of forum is entitled to less deference. ROA.335. Based on the interests of justice because a substantial part of the events or omissions with the Lynaugh Unit Appellees occurred in the Western District of Texas, the district court did not abuse its discretion when it severed and transferred this action to the United States District Court for the Western District of Texas. 28 U.S.C. §§ 1404(a); 1406; ROA.358–60.

## II.    THE DISTRICT COURT PROPERLY DISMISSED WHAT EPLEY CHARACTERIZES AS AN ADA CLAIM WHEN HE FAILED TO ALLEGE ANY FACTS RELATED TO THIS CLAIM OR SPECIFICALLY ALLEGE AN ADA CLAIM AGAINST APPELLEES.

Epley's ADA claim was properly dismissed by the district court when Epley did not specifically allege an ADA claim against any Appellee. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Appellee is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Here, Epley spends a significant portion of his brief discussing an ADA claim against "Appellees" and arguing that he "successfully pleaded in his documents . . . that he had a qualifying disability under the ADA." Appellant's Brief at 12–28. Without providing citations to the record to show that Epley alleged an ADA claim in the district court with appropriate evidence establishing a genuine issue of material fact, Epley

instead relied on extremely brief conclusory assertions and irrelevant case law with no application to the facts of this case in arguing to this Court that he properly asserted an ADA claim against Appellees. Disturbingly, and as noted above, Epley even admitted that he "essentially copied the Opening Brief filed by the attorney" in a separate lawsuit that involved an entirely different unit than the unit at issue in this suit, *see Gonzalez*, 860 Fed. Appx. at 311–15, for the ADA portion of his brief now before the Court and "invok[es] this Honorable Court's ruling in case #19-10781 for its legal analysis" to prove that he stated an ADA claim against Appellees, who were exclusively employed at the Lynaugh Unit. Appellant's Brief at 28. The Fifth Circuit case that Epley relies upon to argue against the dismissal of an ADA claim against Appellees in this suit has no connection to the Lynaugh Unit, Appellees, or the facts of this case. In fact, *Epley v. Gonzalez* involves claims concerning Epley's assignment at the Montford Unit, not his assignment at the Lynaugh Unit, and claims that were asserted against separate Appellees who are not named Appellees in this lawsuit. *see generally Epley*, 860 Fed. Appx. at 311–15.

As the district court properly concluded in its order adopting the magistrate's recommendation to dismiss the ADA claim against Appellees, Epley "mention[ed] the American with Disabilities Act as well as the Rehabilitation Act of 1973 but alleges no facts that support a claim of disability discrimination[.]" ROA.747. In evaluating Epley's amended complaint, *see* ROA.460–525, it is clear that the district court did not err in its determination in this regard when the only mention of the ADA in Epley's amended

complaint was the conclusory assertion that Epley "also reports violations of the Rehabilitation Act of 1973 . . . and Title II of the American[] with Disabilities Act." ROA.491. Apart from this two-line mention of the ADA, any reference to the ADA in Epley's amended complaint is nonexistent as are any facts, accepted as true, that would permit the district court to recognize a claim against Appellees under the ADA. Moreover, Epley cannot now point this Court to an entirely different case, fact pattern, and Appellees to cure his failure to state an ADA claim against the Appellees in this suit. Accordingly, the district court did not err in dismissing Epley's ADA claim against Appellees.

**III.  THE DISTRICT COURT CORRECTLY DISMISSED EPLEY'S FAILURE TO PROTECT CLAIM AGAINST APPELLEES SELLERS, ROBINSON, GONZALES, AND MELERO BECAUSE EPLEY WAS ASSIGNED TO A SINGLE CELL AND DID NOT SUFFER ANY PHYSICAL INJURY AS A RESULT OF HIS HOUSING ASSIGNMENT AT THE LYNAUGH UNIT.**

The district court did not err in dismissing Epley's failure to protect claim against Appellees because Epley did not satisfy the elements of a failure to protect claim when the summary judgment evidence shows he was not in danger at the Lynaugh Unit and was housed in a single-man cell. To establish a failure to protect claim under the Eighth Amendment, Epley must show that (1) he was incarcerated under conditions that objectively posed a substantial risk of serious harm and (2) that each Appellee was deliberately indifferent to his need for protection. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison officials are not liable for failure to protect if "they were unaware of even an obvious risk to inmate health or safety"; if "they did not know of the underlying

facts indicating a sufficiently substantial danger"; if "they knew of the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"; or if "they knew of a substantial risk to inmate health or safety . . . [and] responded reasonably to the danger, even if the harm was not ultimately averted." *Id.* at 844-45. Importantly, the Eighth Amendment does not require that offenders "be housed in a manner most pleasing to them[] or considered even by most knowledgeable penal authorities to be likely to avoid confrontations, psychological depression, and the like." *Atiyeh v. Capps*, 449 U.S. 1312, 1316 (1981).

Epley's minimal allegations about Appellees failing to provide him with safekeeping housing at the Lynaugh Unit as a result of the June 6, 2016, use of force incident at the Montford Unit do not show that (1) he was incarcerated under conditions that objectively posed a substantial risk of serious harm or (2) that each Appellee was deliberately indifferent to his need for protection. ROA.473–74. When Epley arrived at the Lynaugh Unit on June 9, he told the Unit Classification Committee that he had been injured from a use of force incident at the Montford Unit three days prior and that his "injuries were making him even more helpless and vulnerable," implying that he would "be victimized by the gang members" because of those injuries in addition to other reasons which he did not describe in his complaint. ROA.473. Epley claimed that Appellee Sellers and "the Lynaugh-based Appellees in general . . . knew, or should have known from their classification records about Plaintiff, that he needed protection from the gang members." ROA.473. Epley desired and requested that he be

17

placed in safekeeping housing. ROA.473. Appellee Sellers and the Unit Classification Committee instead assigned him to housing consistent with his PULHES "Health Summary for Classification" sheet, which designated Epley as an offender to be housed in "basic housing" and "single cell only" with no cell mates.[3] ROA.3136.

Despite Epley's contention that Appellee Sellers should have known that he required safekeeping housing and his allegation in a June 20, 2016, Step 1 grievance that he asked Appellee Sellers to help with safekeeping, Appellee Sellers specifically wrote in a statement for grievance investigators that Epley did not complain about his housing: "Offender [Epley] is housed properly. He is single cell housed due to his current health summary. Offender has not voiced any problem [with] his current housing and has been housed in D-108B since 6/9/16." ROA.3112. Supporting Appellee Sellers' statement are Epley's eleven PULHES sheets from three different unit assignments from June 2, 2016, through December 20, 2016, each classifying Epley as an offender who received basic housing in a "single cell only." ROA.3142–52. None of Epley's PULHES sheets indicated that he needed safekeeping housing or that he required any other housing arrangement apart from "single cell only" basic inmate housing. ROA.3142–52. Additionally, a Unit Classification Committee History Form

---

[3] An offender's PULHES Health Summary for Classification is determined, reviewed, and documented by medical professionals employed by the University of Texas Medical Branch ("UTMB") or Texas Tech University who provide medical care to offenders serving criminal sentences at TDCJ units throughout the State of Texas. ROA.3174. TDCJ employees do not determine an offender's health status for the purposes of his or her PULHES Health Summary for Classification. ROA.3174.

dated June 2, 2016, listed classification review codes of "01/46" for Epley, specifically indicating that he did not qualify for safekeeping housing review. ROA.3141.

When Epley was transferred to the Lynaugh Unit on June 2, 2016, Epley was given an Offender Assessment Screening in accord with TDCJ's Prison Rape Elimination Act ("PREA") directives. ROA.3153. "[B]ased upon the availability of information at [the] time of [the interview,]" the officer conducting Epley's PREA screening noted that there was no evidence suggesting that Epley had a history of prior institutional violence or sexual abuse. ROA.3153. Although Epley asserts in his amended complaint that he was such a victim, Epley chose not to comply with the PREA officer's Offender Assessment Screening, as the officer noted both on Epley's assessment and in his referral to mental health services that he "was not verbally responsive during [his] chain assessment." ROA.3154–55.

Epley's TDCJ records, including Epley's own grievances, do not indicate that Epley was ever involved in an incident at the Lynaugh Unit in which he suffered an injury at the hands of prison gang members or required safekeeping housing.[4] Neither do Epley's records show that Appellees were deliberately indifferent to his need for protection. Quite simply, Epley cannot show that he even needed protection or that

---

[4] Without providing a single citation to the record on appeal, Epley claims in his original brief "that he experienced prolonged pains at the Lynaugh prison during the month of June 2016, especially considering the fact that the symptoms of his disabilities were greatly exacerbated by being brutalized by violent gang members on several occasions." *Appellant's Original Brief* at 22. Contrary to Epley's conclusory allegation, the summary judgment evidence does not show that Epley was involved in an altercation with other inmates at the Lynaugh Unit or that he suffered physical injury as a result of any altercation. *See, e.g.*, ROA.3112.

Appellees Sellers, Robinson, Gonzales, or Melero acted with deliberate indifference. Appellee Sellers stated that Epley never complained about his single cell housing at Lynaugh, and despite his amended complaint targeting Appellees Robinson, Gonzales, and Melero with the same failure to protect claim that he brought against Appellee Sellers, Epley has not shown that any Appellee acted with deliberate indifference to his alleged need for protection. None of Epley's grievances and no other TDCJ records establish that Appellees Robinson, Gonzales, or Melero were ever involved in Epley's housing assignment at the Lynaugh Unit. In fact, the only record showing even a slight connection between Epley and Appellee Melero was an inter-office communication dated June 21, 2016, in which it stated that Appellee Melero attempted to interview Epley at the Lynaugh Unit on June 20 concerning the use of force incident involving Epley at the Montford Unit on June 6. ROA.3115. Specifically, the inter-office communication reads, in part, as follows:

> Offender Epley is currently assigned to the Lynaugh Unit. Captain Melero attempted to retrieve a written statement from Offender Epley however Offender Epley did not want to address the issue and refuse[d] to cooperate with the investigation. During the interview, Offender Epley stated he did not feel comfortable in any other [u]nits and wanted to be transferred back to the Ramsey Unit for the duration of his incarceration. The offender's allegations were disputed with no credible evidence to support or warrant further investigation.

ROA.3115. Certainly, an officer attempting to conduct an interview with a nonresponsive offender does not satisfy the second prong of a failure to protect claim in which an offender must show that the officer acted with deliberate indifference to

the offender's need for protection. *Farmer*, 511 U.S. at 834. Epley cannot show that he needed protection, because Epley has not actually alleged that he suffered an injury at the hands of prison gang members despite claiming that he needed protection from prison gang members in the form of safekeeping housing. Additionally, no TDCJ records—including Epley's grievances—show that Appellees Robinson or Gonzales ever had an interaction with Epley concerning his alleged need for safekeeping housing.

In his brief, and without citing to the record on appeal, Epley misleadingly stated that he had provided the district court with records indicating he required safekeeping housing while he was housed at the Lynaugh Unit in June 2016. Appellant's Brief at 21. Epley then cited to "ECF #100 Exhibit #01, ECF 102 Exhibit #1, ECF 121 Exhibit #33" to support his safekeeping housing contention. Appellant's Brief at 21. However, Appellant's exhibits, which are three copies of the same document, do not show that Epley was required to be assigned to safekeeping housing at the Lynaugh Unit in June 2016. *See* ROA.1109, 1132, 1500. In truth, Epley cited to a "Discharge Treatment Plan" from August 6, 1996—that is, *twenty years* prior to his housing assignment at the Lynaugh Unit from June 9, 2016, through June 23, 2016—and attempted to argue that a safekeeping housing recommendation from the Jester IV Unit in 1996 applied to his housing arrangement at the Lynaugh Unit in 2016. Appellant's Brief at 21; ROA.1109, 1132, 1500. Epley's conclusion is entirely inaccurate, as shown by Epley's eleven PULHES sheets mentioned above and each classifying Epley as an offender who received basic housing in a "single cell only" from June 2, 2016, through December 20,

2016. ROA.3142–52.

Because Epley has failed to show (1) that he was incarcerated under conditions that objectively posed a substantial risk of serious harm and (2) that each Appellee was deliberately indifferent to his need for protection, Epley has not established a genuine issue of material fact related to his failure to protect claim, and the district court did not err in determining that Appellees were entitled to judgment as a matter of law. Therefore, this Court should affirm the district court's dismissal of Epley's failure to protect claim against Appellees.

## IV. THE DISTRICT COURT DID NOT ERR IN DISMISSING EPLEY'S DELIBERATE INDIFFERENCE CLAIM AGAINST APPELLEE SELLERS BECAUSE EPLEY FAILED TO ESTABLISH THAT HE WAS EXPOSED TO A SUBSTANTIAL RISK OF SERIOUS HARM AND THAT APPELLEE SELLERS DISREGARDED THAT RISK.

Epley's deliberate indifference claim against Appellee Sellers is wholly conclusory and unsupported by the summary judgment evidence. It is well-established that no recovery may be had under 42 U.S.C. § 1983 absent proof of the deprivation of a right secured by the Constitution or laws of the United States. *Baker v. McCollan,* 443 U.S. 137, 140 (1979); *Thorne v. Jones,* 765 F.2d 1270, 1272 (5th Cir. 1985). Thus, the first inquiry in any suit brought under § 1983 is whether the plaintiff has been deprived of a federally secured right. *Baker,* 443 U.S. at 140. Not every harm caused by a state officer constitutes a violation of 42 U.S.C. § 1983. "Section 1983 imposes liability for violations of rights protected by the Constitution, not violations of duties of care arising out of tort law." *Lynch v. Cannatella*, 810 F.2d 1363, 1375 (5th Cir. 1987). Neither violations of

duties of care arising out of ordinary tort law, nor injuries resulting from a prison official's negligent conduct are actionable under § 1983. *Davidson v. Cannon,* 474 U.S. 344, 347 (1986).

A prison official may violate the Eighth Amendment's prohibition against cruel and unusual punishment if he acts with deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 352 n.12 (5th Cir. 2006). Deliberate indifference, as it is used in the Eighth Amendment context, comprehends more than mere negligence but less than purposeful or knowing infliction of harm; it requires a showing of "subjective recklessness" as used in criminal law. *Farmer*, 511 U.S. at 839–40; *see also Hare v. City of Corinth*, 74 F.3d 633, 647–48 (5th Cir. 1996); *see also Cadena v. El Paso Cty.*, 946 F.3d 717, 728 (5th Cir. 2020) ("Deliberate indifference is an extremely high standard to meet."). A showing of deliberate indifference requires a plaintiff to establish "that the Appellee (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) subjectively drew the inference that the risk existed; and (3) disregarded the risk." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (internal quotations and citations omitted). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a [Appellee] disregarded a known or obvious consequence of his action." *Connick v.*

*Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). A plaintiff's claim for deliberate indifference is meritorious if he can show "that a federal actor denied him treatment, ignored his complaints, knowingly treated him incorrectly, or otherwise evidenced a wanton disregard for his serious medical needs." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) (citing *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). Importantly, "a prisoner's disagreement with his medical treatment" does not constitute deliberate indifference. *Gobert*, 463 F.3d at 346.

Epley has not shown that Appellee Sellers deprived him of a constitutionally protected right through deliberate indifference to his serious medical needs. Epley did not specifically allege a deliberate indifference claim against Appellee Sellers in his amended complaint. *See generally* ROA.460–525. In the context of his medical treatment at the Lynaugh Unit in June 2016, Epley briefly mentioned Appellee Sellers in his amended complaint when he alleged that he was "denied much-needed medical treatments" by "Lynaugh-based medical officials" after Appellee Sellers "informed the Lynaugh prison officials that [Epley] had been injured by officials at [the] Montford [Pyschiatric Unit.]" ROA.471. Epley also claimed that after he spoke with medical provider Samuel Itie, a UTMB Appellee in this suit, and alerted him to the "Traumatic Brain Injury [that he allegedly suffered in the June 6 use of force incident at the Montford Unit] – which required critical immediate treatment," Appellee Sellers proceeded to speak with Itie, who apparently concluded after the alleged discussion

with Appellee Sellers that Epley no longer needed emergency medical treatment at a local hospital. ROA.471–72.

Epley's attempts to implicate Appellee Sellers in a deliberate indifference claim are beyond tenuous and amount to mere conclusory statements insufficient to state a claim of deliberate indifference to his serious medical needs. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Appellee is liable for the misconduct alleged."). Apart from Epley assuming that Itie's conclusion that Epley did not require emergency medical treatment on June 10 for an alleged traumatic brain injury stemming from the June 6 use of force incident directly resulted from Itie's alleged discussion with Appellee Sellers, to which Epley was not privy, Epley has provided no factual basis that could render a deliberate indifference claim against Appellee Sellers plausible on its face.

Moreover, Epley has not shown that he, in fact, had a serious medical need for which Appellee Sellers denied him treatment, ignored his complaints, knowingly treated him incorrectly, or wantonly disregarded his serious medical needs. After the June 6 use of force incident at the Montford Unit, Epley received a physical evaluation from medical staff that was documented in a "Use of Force Nursing Note." ROA.3135. In her evaluation, Nurse Tara Flores wrote that Epley suffered no significant health effects from the use of force incident:

> Patient denies any injuries and denies respiratory difficulty. No visible injuries or respiratory distress noted. Bloody nose observed after UOF, is unknown if it was self[-]inflicted, he kept his hands over his nose [and]

mouth during UOF, when asked if injuries occurred during UOF he began speaking in a different language. Refused area to be cleansed, assessed closer. Assessment: No adverse health effects from use of force. Plan: Released to security.

ROA.3135. One day after the June 6 use of force incident, Epley was evaluated by LVN Sonya Sparks for a transfer screening after being transferred to the Robertson Unit on June 7. ROA.3138. In her screening, LVN Sparks specifically noted that Epley "[d]enies . . . any wound care needs." ROA.3138.

On June 10, Epley was evaluated at the Lynaugh Unit by FNP Samuel Itie, who noted several complaints from Epley concerning the June 6 use of force incident and wrote that a concussion had yet to be ruled out for Epley. ROA.3133. Itie placed Epley on a Tylenol regimen and noted that naproxen would be ordered upon ruling out a concussion, that Epley was to rest and avoid strenuous activity, that X-Rays would be ordered, and that a CT scan could be ordered if Epley's stated symptoms persisted. ROA.3133. After he was scheduled for X-Rays, Epley signed a refusal of treatment form on June 22, 2016, in which he refused X-Rays, citing a fear of "complications with the officials" as the reason for his refusal of treatment. ROA.3131. Epley again refused X-Rays on September 2, 2016 "because the procedure is known to be unsafe e.g.[,] damage to DNA, cause certain cancers . . . I continue to request MRI and Cat-scan as soon as possible." ROA.3130.

As Epley's medical records establish, Appellee Sellers was not involved in any denial of Epley's medical treatment, nor has Epley shown that Appellee Sellers ignored

his complaints, knowingly treated him incorrectly, or wantonly disregarded his serious medical needs. Epley was medically evaluated on numerous occasions throughout June 2016, with medical personnel documenting Epley's complaints and treating him in accord with their best medical judgment, which included ordering X-Rays for Epley that he ultimately chose not to receive. Because Epley has not shown that Appellee Sellers denied him medical treatment, ignored his complaints, knowingly treated him incorrectly, or wantonly disregarded his serious medical needs, Epley has failed to state a deliberate indifference claim against Appellee Sellers. Accordingly, Appellee Sellers is entitled to judgment as a matter of law, and this Court should affirm the district court's dismissal of Epley's deliberate indifference claim against her.

**V.    THE DISTRICT COURT DID NOT ERR IN DISMISSING EPLEY'S FREE EXERCISE CLAIM AGAINST APPELLEE ROBINSON BECAUSE THE SUMMARY JUDGMENT EVIDENCE DOES NOT SHOW THAT APPELLEE ROBINSON EVER CONFISCATED EPLEY'S RELIGIOUS MEDALLION.**

In light of the evidence showing that Epley's personal property was bagged and placed outside the door in the infirmary during his transfer to medical observation and ensuing transfer to the Montford Unit on June 2, 2016, Epley has failed to state a free exercise claim against Appellee Robinson. "[R]easonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 329 n.2 (1972). "[A] prison regulation that impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S.

78, 89 (1987). *Turner* set forth a four-factor test to determine whether such a reasonable

relation exists: A court should determine:

> (1) whether there is a rational relationship between the regulation and
> legitimate government interest advanced; (2) whether the inmates have
> available alternative means of exercising the right; (3) the impact of the
> accommodation on prison staff, other inmates, and the allocation of
> prison resources generally; and (4) whether there are "ready alternatives"
> to the regulation.

*Freeman v. Texas Dept. of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Turner*,

482 U.S. at 89-91). Notably, "a court need not 'weigh evenly, or even consider, each of

these factors,' as rationality is the controlling standard." *Id.* (citing *Scott v. Miss. Dept. of

Corr.*, 961 F.2d 77, 81 (5th Cir. 1992)). "The pertinent question is not whether the

inmates have been denied specific religious accommodations, but whether, more

broadly, the prison affords the inmates opportunities to exercise their faith." *Id.* at 861;

*see also Newby v. Dretke*, No. 2:05-cv-0128, 2006 WL 8439856, at *4 (N.D. Tex. Aug. 18,

2006) (deciding that the plaintiff failed to show a violation of his constitutional rights

when his allegations did "not state that the Appellees denied or restricted his right to

practice Buddhism in his cell" or that he "had been denied alternate means of exercising

his religion"). As always, in a 42 U.S.C. § 1983 claim the plaintiff must show that the

Appellee was personally involved in a violation of his constitutional rights. *Cass v. City

of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016) (stating that the Appellee was not personally

liable under § 1983 because the plaintiff provided no evidence of the Appellee's

involvement in the acts that allegedly violated the plaintiff's constitutional rights).

In his amended complaint, Epley did not allege that a prison regulation impinged on his constitutional rights nor did Epley challenge whether a prison regulation affecting the practice of his faith was reasonably related to a legitimate penological interest. *See generally* ROA.460–525. While Epley claimed in his amended complaint—filed on October 22, 2018—that Appellee Robinson confiscated his religious medallion in early June 2016 while Epley was briefly housed at the Lynaugh Unit, Epley stated in a Step 1 grievance submitted on June 30, 2016 not that Appellee Robinson violated his constitutional right to the free exercise of his religion by confiscating his medallion, but only that Appellee Robinson either failed to abide by TDCJ policy in storing his property in the midst of Epley's transfer to the Montford Unit or lost his medallion "because he was not properly trained by the administration." ROA.3095. Additionally, the grievance investigation into Epley's June 30 allegations also shows that Robinson did not violate Epley's First Amendment right to the free exercise of his religion through the confiscation of Epley's religious medallion or any other item of Epley's property. In a statement provided to the grievance investigator, Appellee Robinson said that Epley "was told on the day he was placed on direct [medical] observation [that] all of his personal items as well as State Clothing were bagged and placed outside the door in the infirmary." ROA.3099. The absence of any reference to the confiscation of a religious medallion in TDCJ's property confiscation records for Epley from 2016 and 2017 support Appellee Robinson's statement to grievance investigators on July 11, 2016. *See* ROA.3156–64; *see also* ROA.3099.

While unfortunate, the loss of Epley's religious medallion does not rise to the level of a constitutional violation by Appellee Robinson. As the following interaction between a Lynaugh Unit official and a Ramsey Unit official[5] makes clear, TDCJ officials at the Lynaugh Unit gathered Epley's property and properly shipped his possessions to his unit of assignment, which was an undoubtedly difficult task given that Epley was transferred no less than seven times in the month of June 2016 alone. *See* ROA.3102 (listing Epley's units of assignment throughout June 2016). After Epley was transferred to the Ramsey Unit, a Ramsey Unit Grievance Investigator emailed TDCJ official Sheila Lehnert on September 12, 2016, and stated that Epley had not yet received his legal material or religious material after his unit transfers:

> I have a property grievance from [offender Epley] in which he states that he has still not received his legal and religious materials. Here is the problem, He left [the Ramsey Unit] 05/27/16 to [the Lynaugh Unit] arrived on your unit, 06/03/2016. He then left [the Lynaugh Unit] to [the Stringfellow Unit] on 06/24/2016. I had our property officer check on any outgoing property and he advised that offender's property was shipped on 05/30/2016 to [the Lynaugh Unit] MST[]#1324981. Can you please check with your property officer to see when this property was received and if this property was shipped back out to [the Stringfellow Unit]. . . . When offender was here he had a lot of legal material.

ROA.3092. On September 15, Property Officer Galindo responded to the Ramsey Unit Grievance Investigator's email by assuring her that Epley's property had been shipped to the Stringfellow Unit: "Property for Offender [Epley] was received from Ramsey

---

[5] Prior to being reassigned to the Lynaugh Unit on June 2, 2016, Epley had been assigned to the Ramsey Unit from September 6, 2011 through May 27, 2016. ROA.3102.

Unit, and shipped out to Stringfellow Unit where the offender is assigned now. MST #1312535." ROA.3093. The loss of Epley's religious medallion was regrettable, but taken together with the summary judgment evidence, Epley has failed to establish that the loss of his medallion was, in fact, a constitutional violation of his First Amendment right to the free exercise of his religion by Appellee Robinson. There is simply no evidence to show that Appellee Robinson confiscated Epley's religious medallion or that Appellee Robinson, or any other Lynaugh Unit official, impinged on Epley's right to the free exercise of his religion. Therefore, Epley has failed to present a genuine issue of material fact related to his free exercise claim, and this Court should affirm the district court's dismissal of Epley's claim against Appellee Robinson.

**VI.**   **THIS DISTRICT COURT DID NOT ERR IN DISMISSING EPLEY'S RETALIATION CLAIM AGAINST APPELLEE ROBINSON WHEN EPLEY FAILED TO SATISFY THE ELEMENTS REQUIRED IN ORDER TO STATE A RETALIATION CLAIM AGAINST APPELLEE ROBINSON.**

Epley's allegations against Appellee Robinson are insufficient to support a claim for retaliation. To prevail on a claim of retaliation, an inmate must establish (1) a specific constitutional right, (2) the Appellee's intent to retaliate against the inmate for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart,* 132 F.3d 225, 231 (5th Cir. 1998); *see also Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995). The Fifth Circuit has cautioned that prison officials must be given wide ranging deference in the management of inmates:

> The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic

31

> duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every . . . act that occurs in state penal institutions.

*Woods,* 60 F.3d at 1166. To decide otherwise would allow prisoners to "inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them." *Id.*

Consequently, to state a claim for retaliation, an inmate must allege a violation of a specific constitutional right, and "be prepared to establish that *but for* the retaliatory motive the complained of incident . . . would not have occurred." *Id.* (emphasis added). Furthermore, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id.* (quoting *Jackson v. Cain*, 864 F.2d 1235, 1143 n. 6 (5th Cir. 1989)). Evidence that the action of the prison official would be legitimate outside the context of possible retaliation is potent proof of the Constitutionality of the official's actions. *Id.*

Concerning the loss of Epley's religious medallion in the midst of his transient status on June 2, 2016, Epley cannot establish that, but for a retaliatory motive, his property, including his religious medallion, would not have been temporarily removed from his possession. On May 31, 2016, Epley was assigned to the Robertson Unit before being recommended by the State Classification Committee for transfer to the Lynaugh Unit, at which Epley arrived on June 2, 2016. ROA.3102. That same day, Epley was temporarily transferred for medical reasons to the Montford Unit, after which he

was transferred "en route" to the Robertson Unit on June 7 and arrived back at the Lynaugh Unit on June 9. ROA.3102. Due to being transferred to several units in the span of nine days, Epley's personal property, including his religious medallion, had to be collected and stored. ROA.3098–3100.

On  June 30, 2016, Epley submitted a Step 1 grievance in which he complained that Appellee Robinson either failed to comply with TDCJ policy in separating and storing the property of an offender departing a unit of assignment for temporary medical or psychological reasons, resulting in the loss of Epley's religious medallion, or that Appellee Robinson lost Epley's religious medallion "because he was not properly trained by the administration." ROA.3095. Upon an investigation of Epley's grievance, Appellee Robinson was interviewed and stated that Epley "was told on the day he was placed on direct [medical] observation [that] all of his personal items as well as State Clothing were bagged and placed outside the door in the infirmary. He was never told by this Sgt. [(i.e., Appellee Robinson)] his property was in the property room." ROA.3099. When Epley had been placed on medical observation and had his belongings bagged and set outside the infirmary door, "the only items received [by property staff] from the Medical department was Rhino boots and eye[]glasses." ROA.3096. As a result, grievance investigators found that there was "no evidence [that] staff is responsible for the loss of your property." ROA.3096. Merely stating in a complaint that a correctional officer retaliated against an offender is not enough for that offender to have pled a retaliation claim and a violation of his Eighth Amendment

rights. *Woods,* 60 F.3d at 1166. Epley has failed to put forth evidence that Appellee Robinson retaliated against him by confiscating his religious medallion, and Epley's claim amounts to a conclusory assertion insufficient to state a claim of retaliation. More specifically, Epley has failed to establish that Appellee Robinson acted with a retaliatory intent and has not shown that *but for a* retaliatory motive, his religious medallion would not have been lost. In fact, Epley cannot even show that his medallion was confiscated, as opposed to the very plausible possibility that his religious medallion was simply lost in the midst of Epley's move to medical observation and his transfers to multiple units in the span of nine days.

According to the Magistrate Judge's report and recommendation, Epley claimed that Appellee Robinson retaliated against him in relation to his request for medical treatment. ROA.579 (Magistrate's Report and Recommendation to retain Epley's retaliation claim against Appellee Robinson "related to Epley's requests for medical treatment"); ROA.480. Specifically, Epley wrote in his amended complaint that Appellee Robinson retaliated against Epley "for having reported having been brutalized [(i.e., the use of force incident at the Montford Unit)], for seeking much-needed medical and psychiatric treatments for his serious medical conditions . . . . and for seeking protection from the members of the organized criminal gangs at Lynaugh." ROA.480. Epley's allegation, however, fails to satisfy the elements of a retaliation claim. There is no evidence to suggest that Appellee Robinson ever acted toward Epley with a retaliatory intent for Epley reporting the June 6 use of force at the Montford Unit, for

requesting safekeeping housing, or for seeking medical treatment related to the June 6 use of force incident. Epley's medical records also indicate that Epley received consistent medical treatment during his brief assignment to the Lynaugh Unit in June 2016 that render impossible Epley's claim that Appellee Robinson retaliated against him by engaging in the adverse act of blocking Epley's access to medical treatment.

For instance, when Epley first arrived at the Lynaugh Unit on June 2, 2016, Epley received a Pre-Crisis Management Health Evaluation in which his health was thoroughly evaluated and in which he received a referral to Dr. Bartley at Mental Health Services for further evaluation. ROA.3134. Epley was then transferred to the Montford Pyschiatric Unit, and, before arriving back at the Lynaugh Unit on June 9, Epley received a chart review and evaluation for a transfer screening form at the Robertson Unit on June 7. ROA.3138. On June 9, Epley received another medical and mental health transfer screen from RN Janette Munoz and FNP Samuel Itie when he arrived at the Lynaugh Unit. ROA.3137. On June 10, Epley was again seen by FNP Samuel Itie, who documented Epley's several complaints related to the June 6 use of force incident at the Montford Unit. ROA.3133. Upon the conclusion of Epley's office visit with FNP Itie, procedures including a chest X-Ray and a shoulder X-Ray had been ordered. ROA.3133.

FNP Itie saw Epley again on June 14 for a follow-up office visit from his June 10 appointment. Epley presented more complaints, including a migraine headache, with FNP Itie noting that Epley was still waiting on X-Rays, which he later refused on June

22, 2016. ROA.3131, 3132. FNP Itie also started Epley on Naproxen for pain relief. ROA.3132. Epley's medical records clearly indicate that Epley received consistent and repeated medical care during his assignment to the Lynaugh Unit. Neither do his medical records nor any other record establish that Appellee Robinson ever retaliated against Epley by impeding Epley's access to medical treatment during June 2016. In fact, Epley's grievances do not allege that Appellee Robinson retaliated against Epley by committing the retaliatory adverse act of blocking Epley's access to medical care. Clearly, Epley has failed to state a retaliation claim against Appellee Robinson, as the summary judgment evidence entirely contradicts Epley's failed attempt at showing that Appellee Robinson acted with retaliatory intent, committed a retaliatory adverse act, and that but for the alleged retaliatory motive, the "complained of incident . . . would not have occurred." *McDonald,* 132 F.3d at 231; *Woods,* 60 F.3d at 1166. In reality, the "complained of incident"—that is, Appellee Robinson's alleged obstruction of Epley's medical treatment—remains a fiction, as Epley's medical records prove that he consistently received medical treatment throughout his assignment at the Lynaugh Unit. Accordingly, Epley has not stated a retaliation claim against Appellee Robinson, and the district court did not err in granting Appellee Robinson judgment as a matter of law.

## VII. THE DISTRICT COURT CORRECTLY DECIDED THAT APPELLEES WERE ENTITLED TO QUALIFIED IMMUNITY.

Because Appellees were state officials at the time of the events alleged to Epley's

36

amended complaint, and because Epley has failed to show that Appellees violated his constitutional rights, Appellees are entitled to qualified immunity in their individual capacities. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If an official is protected by qualified immunity, his or her personal liability for "an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819).

The Supreme Court articulated a two-step inquiry to evaluate a government official's entitlement to qualified immunity: a court must (1) consider whether the facts alleged by the plaintiff implicate a violation of a constitutional right, and (2) determine whether the claimed right was "'clearly established' at the time of the Appellee's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). Importantly, the plaintiff's complaint must allege the Appellee's personal involvement. *Cass*, 814 F.3d at 729 (stating that the Appellee was not personally liable under § 1983 because the plaintiff provided no evidence of the Appellee's involvement in the acts that allegedly violated the plaintiff's constitutional rights). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Stauffer v. Gearhart*, 741 F.3d 574,

583 (5th Cir. 2014) (internal quotation marks and citations omitted).

Inasmuch as Epley argues that Appellees are liable in their individual capacities, there exists no evidence to support his claims. Per the facts alleged in Epley's complaint, Epley does not implicate a single plausible violation of his constitutional rights. As the summary judgment evidence shows, Epley's failure to protect claim against Appellees fails to rise to the level of a constitutional violation when Epley was consistently designated in his PULHES Health Summary forms as an offender requiring only basic, single cell housing at his units of assignment, and when Epley provided no evidence showing that his single cell housing assignment at the Lynaugh Unit resulted in his injury. ROA.3109, 3112; ROA.3136; ROA.3142–52. Epley has also failed to show that Appellee Sellers, the chief of Classification at the Lynaugh Unit at the time, was ever deliberately indifferent to his serious medical needs regarding his medical treatment in the days after a use of force incident involving Epley at the Montford Unit in 2016. Finally, the summary judgment evidence contradicts Epley's claims that Appellee Robinson violated his free exercise right under the First Amendment when Epley's religious medallion was lost or that Appellee Robinson retaliated against Epley by denying him access to medical treatment. Epley offers only conclusory allegations against Appellees. Accordingly, Epley has not overcome Appellees' entitlement to qualified immunity, and this Court should affirm the district court's grant of summary judgment in favor of Appellees.

## CONCLUSION

For the reasons stated, Appellees respectfully request that this Court AFFIRM the district court's dismissal of Epley's claims.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief,
Law Enforcement Defense Division

*/s/ Alec R. Simpson*
**ALEC R. SIMPSON**
Assistant Attorney General Texas State Bar
No. 24118534 alec.simpson@oag.texas.gov

Law Enforcement Defense Division
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, TX 78711-2548
(512) 463-2080 / (512) 370-9814 (fax)

**ATTORNEYS FOR APPELLEES
SELLERS, GONZALES, ROBINSON,
AND MELERO**

## CERTIFICATE OF SERVICE

I, **ALEC SIMPSON**, Assistant Attorney General of Texas, certify that a copy

of Supplemental **Brief of Appellees Sellers, Gonzales, Robinson, and Melero** has

been served on September 29, 2023, via electronic mail addressed to the following:

Samuel Weiss
Rights Behind Bars
416 Florida Ave
NW#26152
Washington D.C. 20001
sam@rightsbehindbars.com
**Attorney for Appellant**

*/s/ Alec Simpson*
**ALEC SIMPSON**
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

As required by Federal Rule of Appellate Procedure 32(a)(7)(C), and pursuant to

5th Cir. Rule 25.2, I certify that:

1. This brief complies with the type-volume limitations of Rule 32(a)(7)(B)(i) because this brief contains **10,559** words as calculated by Microsoft Word.

2. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Garamond font.

3. The electronic version of this brief is an exact copy of the paper version, includes the required privacy redactions under 5th Cir. Rule 25.2.13, and has been scanned and reported free of viruses by the most recent version of a commercial virus-scanning program.

*/s/ Alec Simpson*
**ALEC SIMPSON**
Assistant Attorney General